## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICK DORSEY,** | **CIVIL ACTION** |
| **Appellant** | |
| **VERSUS** | **NO. 14-1402** |
| **U.S. DEPARTMENT OF EDUCATION, et al.** | **SECTION "E"** |
| **Appellees** | |

## ORDER AND REASONS

Before the Court is *pro se* appellant Mick Dorsey's ("Dorsey") appeal from the United States Bankruptcy Court for the Eastern District of Louisiana ("the Bankruptcy Court").[1] Dorsey is appealing the Bankruptcy Court's dismissal of his adversary proceeding seeking an undue hardship discharge of his student loan debt under § 523(a)(8) of the Bankruptcy Code ("undue hardship discharge"). The Bankruptcy Court's basis for dismissing the adversary proceeding was that Dorsey failed to prosecute and failed to comply with the court's order to file an application for administrative discharge of his student loan debt under the Federal Family Education Loan Program ("FFELP") based on his being disabled ("disability discharge" or "administrative discharge") before pursuing his undue hardship discharge adversary proceeding.[2] For the reasons set forth below, this Court **REVERSES** the Bankruptcy Court's dismissal of Dorsey's adversary proceeding and **REMANDS** the case for further proceedings consistent with this order.

---

[1] R. Doc. 1.
[2] R. Doc. 1-4. *See* 20 U.S.C. § 1087.

## BACKGROUND

Dorsey filed a voluntary petition for relief under Chapter 7 on March 3, 2013 and received his general discharge on July 10, 2013. On July 9, 2013, Dorsey filed an adversary proceeding against the U.S. Department of Education ("DOE") and Educational Credit Management Corp. ("ECMC") seeking an undue hardship discharge of his student loan debt under § 523(a)(8) of the Bankruptcy Code on the basis that his medical conditions prevent him from holding steady employment to meet his financial obligations, including the student loan debt in question.

ECMC filed its answer on August 2, 2013. In October of 2013, the DOE filed a consent motion to stay the proceedings due to the Government funding lapse, although the DOE had yet to answer at that time. On November 25, 2013, the day the stay expired, Dorsey filed a motion for summary judgment and the Bankruptcy Court held its first pre-trial conference. Following the conference, the Bankruptcy Court ordered Dorsey to serve summons on the U.S. Attorney's Office because the DOE had not yet been properly hailed into court. The Bankruptcy Court also ordered Dorsey to seek an administrative discharge of his student loan debt based on his being disabled by filing an application with the DOE (a "TPD application") within 60 days of the court's order, by January 31, 2014, or his adversary proceeding would be dismissed.[3]

Three days after the court's order, Dorsey filed a request that summons be issued

---

[3] Section 523(a)(8) of the Bankruptcy Code provides that student loans are nondischargeable in bankruptcy; however, there is an exception if nondischarge "would impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). On the other hand, an administrative discharge under the FFELP allows a discharge of student loan debt liability if a debtor "dies or becomes permanently and totally disabled (as determined in accordance with regulations of the Secretary), or . . . is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, has lasted for a continuous period of not less than 60 months, or can be expected to last for a continuous period of not less than 60 months." 20 U.S.C. § 1087(a)(1). To obtain this administrative discharge based on disability, the debtor must file a TPD application with the DOE. *See* 34 C.F.R. § 682.402(c)(2).

on the U.S. Attorney's Office[4] and also sent a letter to the Bankruptcy Court addressing why he believed requiring him to pursue an administrative discharge by filing a TPD application with the DOE, before he could proceed with his adversary proceeding under § 523(a)(8), was not appropriate in this case. Specifically, Dorsey argued that he and his physician could not fill out the TPD application because the application itself explicitly states it is not to be completed if the applicant does not have a medically determined physical or mental impairment as defined by the DOE. Dorsey contends he is not eligible for a disability discharge under the FFELP because he does not meet the DOE's requirements for being considered totally and permanently disabled and, in any case, he has the right to seek an undue hardship discharge under § 523(a)(8) of the Bankruptcy Code rather than pursuing an administrative disability discharge under the FFELP.

On January 24, 2014, the Bankruptcy Court held a status conference, which Plaintiff's counsel could not attend because she just had given birth. Upon learning Dorsey had not yet filed a TPD application with the DOE, the Bankruptcy Court issued an order for him to appear and show cause at a hearing on February 25, 2014 as to why his adversary proceeding should not be dismissed for failure to prosecute and for failure to file the application as ordered by the court. At the hearing on February 25, 2014, Dorsey appeared with his attorney and attempted to urge his position that requiring him to seek an administrative discharge by filing a TPD application with the DOE is not appropriate in this case. The court rejected his position and ordered that the hearing on the order to show cause be continued until March 11, 2014 and that Dorsey submit the TPD application before then or his adversary proceeding for an undue hardship

---

[4] It appears from the record that the certificate of service was returned executed on February 25, 2014. The case was dismissed on March 11, 2014. The DOE never filed an answer to Dorsey's adversary proceeding.

discharge under § 523(a)(8) would be dismissed. Two days later, Dorsey sent another letter opposing the court's "ultimatum" that he fill out the TPD application or else his case would be dismissed. Dorsey stated he desired a fair opportunity at a later date for his attorney to be present and explain his position.

The Bankruptcy Court did not take any action in response to Dorsey's letter. On March 7, 2014, Dorsey filed into the record a TPD application, which noticeably had major portions struck through. On March 10, 2014, ECMC filed an objection to Dorsey's TPD application stating that Dorsey apparently was not reading the application correctly or had issues with the questions. ECMC requested the Bankruptcy Court to require Dorsey to properly execute and submit the application to the DOE rather than filing it in the record. At a hearing the following day, March 11, 2014, the Bankruptcy Court dismissed Dorsey's adversary proceeding for failure to prosecute and for failure to file a TPD application with the DOE as ordered by the court. Upon the Bankruptcy Court denying Dorsey's motion to reconsider the dismissal, Dorsey filed the instant appeal.

Dorsey presents twelve issues on appeal.[5] These issues essentially boil down to three overarching issues: (1) was it proper for the Bankruptcy Court to order Dorsey to seek an administrative discharge pursuant to the FFELP by filing a TPD application with the DOE before he could proceed with his adversary proceeding under § 523(a)(8) of the Bankruptcy Code; (2) did the Bankruptcy Court abuse its discretion by dismissing Dorsey's adversary proceeding for failure to prosecute and for failure to comply with the court's order; and (3) was the Bankruptcy Court obligated to consider Dorsey's motion for summary judgment prior to directing him to take other action in the proceeding.[6]

---

[5] R. Doc. 1-3.

[6] *Id.* The twelfth issue relating to whether the Bankruptcy Judge violated Canons of the Code of Judicial Conduct is not properly before this Court. *See U.S. v. Microsoft Corp.*, 253 F.3d 34, 114 (D.C. Cir. 2001)

## JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a)(1), which authorizes appellate review of final orders, judgments, and decrees of a United States Bankruptcy Court entered consistent with 28 U.S.C. § 157.[7] The standard of review applicable to this bankruptcy appeal is identical to the standard of review employed by a court of appeal reviewing a district court proceeding.[8] The district court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo.*[9]

Dorsey appeals a final order of the Bankruptcy Court dismissing his adversary proceeding under § 523(a)(8) of the Bankruptcy Code for failure to prosecute and for failure to file a TPD application with the DOE as ordered by the court.[10] The Bankruptcy Court did not specify whether the suit was dismissed with or without prejudice. However, "unless an involuntary order of dismissal specifies that it is without prejudice . . . it operates as an adjudication on the merits."[11] Thus, this Court will consider the dismissal at issue in this case to be with prejudice under Rule 41(b) of the Federal Rule of Civil Procedure.[12]

---

("The Code of [Judicial] Conduct contains no enforcement mechanism. The Canons, including the one that requires a judge to disqualify himself in certain circumstances, are self-enforcing. There are, however, remedies extrinsic to the Code. One is an internal disciplinary proceeding, begun with the filing of a complaint with the clerk of the court of appeals pursuant to 28 U.S.C. § 372(c). Another is disqualification of the offending judge under either 28 U.S.C. § 144, which requires the filing of an affidavit while the case is in the District Court, or 28 U.S.C. § 455, which does not." (citations omitted)).

[7] 28 U.S.C. § 158(a)(1).

[8] *See* 28 U.S.C. § 158(c)(2); *see also In re Nat'l Gypsum Co.,* 208 F.3d 498, 504 (5th Cir. 2000).

[9] *In re Green Hills Dev. Co.,* 741 F.3d 651, 654 (5th Cir. 2014). *See also* Fed. R. Bankr. P. 8013.

[10] R. Doc. 1.

[11] *Callip v. Harris Cnty. Child Welfare Dep't,* 757 F.2d 1513, 1519 (5th Cir. 1985) (citing Fed. R. Civ. P. 41(b); *Weissinger v. U.S.,* 423 F.2d 795, 798–99 (5th Cir. 1970) (en banc)).

[12] *See also In re Wood,* 199 F. App'x 328, 331 (5th Cir. 2006) (unpublished) ("[T]his Court has treated a dismissal for failure to prosecute as an involuntary dismissal under Federal Rule of Civil Procedure 41(b), which is a dismissal with prejudice.").

## DISCUSSION

Dorsey appeals the Bankruptcy Court's dismissal of his adversary proceeding in which he sought an undue hardship discharge of his student loan debt under § 523(a)(8) of the Bankruptcy Code. Student loan debts are generally nondischargeable in bankruptcy; however, the Bankruptcy Code provides an exception in cases where the debt "would impose an undue hardship on the debtor and the debtor's dependents."[13] The debtor bears the burden of proving undue hardship under § 523(a)(8) by a preponderance of the evidence.[14] "Undue hardship" is not defined in the Bankruptcy Code.[15] The circuits are split on which test to apply when determining undue hardship: the three-part *Brunner* test or the totality-of-the-circumstances test.[16] The Fifth Circuit has adopted the *Brunner* test for purposes of evaluating undue hardship under § 523(a)(8).[17] To obtain an undue hardship discharge under § 523(a)(8), the debtor must show:

> (1) that [he] cannot maintain, based on current income and expenses, a "minimal" standard of living for [himself] and [his] dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that [he] has made good faith efforts to repay the loans.[18]

*(1) The Bankruptcy Court's order requiring Dorsey to seek an administrative discharge before proceeding with his adversary proceeding*

The Bankruptcy Court ordered Dorsey to file a TPD application with the DOE and

---

[13] 11 U.S.C. § 523(a)(8).
[14] *See In re Spence*, 541 F.3d 538, 544 (4th Cir. 2008) (citing other circuit court cases).
[15] *See* 11 U.S.C. § 101; 11 U.S.C. § 523(a)(8).
[16] *See Educ. Credit Mgmt. Corp. v. Jesperson*, 571 F.3d 775, 788 (8th Cir. 2009) (Bye, J., dissenting in part) (discussing which circuits use which test).
[17] *In re Gerhardt*, 348 F.3d 89, 91 (5th Cir. 2003).
[18] *Id.*

stated it "can't do anything without [Dorsey] filing this particular application."[19] Additionally, the Bankruptcy Court told Dorsey his adversary proceeding would be dismissed if he did not comply. The Bankruptcy Court ultimately dismissed his adversary proceeding citing this reason as well as failure to prosecute. Dorsey contends the Bankruptcy Court abused its discretion by ordering him to pursue an administrative discharge under the FFELP and dismissing his adversary proceeding for not doing so.

Whereas a bankruptcy discharge under § 523(a)(8) allows dischargeability of student loan debt based on a determination of undue hardship, an administrative discharge pursuant to the FFELP may be sought

> [i]f a student borrower . . . dies or becomes permanently and totally disabled (as determined in accordance with regulations of the Secretary), or if a student borrower . . . is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, has lasted for a continuous period of not less than 60 months, or can be expected to last for a continuous period of not less than 60 months.[20]

A discharge under the FFELP "is an administrative matter, handled by the [DOE], and is completely separate and distinct from a bankruptcy discharge based on § 523(a)(8)'s undue hardship standard."[21] A debtor may be entitled to a § 523(a)(8) discharge but not qualify for a [total and permanent disability] discharge and vice-versa.[22] Additionally, "FFELP and its implementing regulations explicitly provide for bankruptcy as an alternative ground for a student loan debt discharge."[23] There is no prohibition against a debtor seeking an undue hardship discharge under § 523(a)(8) after first pursuing an

---

[19] *See* Official Hearing Tr. p. 3, February 25, 2014.
[20] 20 U.S.C. § 1087.
[21] *In re Cagle*, 462 B.R. 829, 831 (Bankr. D. Kan. 2011) (citing 20 U.S.C. § 1087(a) and 34 C.F.R. § 682.402(c); *Gregory v. U.S. Dep't of Educ. (In re Gregory)*, 387 B.R. 182, 189 (Bankr. N.D. Ohio 2008)).
[22] *Id.*
[23] *Id.* (citing 20 U.S.C. § 1087(b) and 34 C.F.R. § 682.402(f)).

administrative discharge by filing a TPD application with the DOE.[24]

The interplay of the availability of undue hardship discharge of student loan debts under § 523(a)(8) and the principle of exhaustion of administrative remedies has been litigated in the context of another administrative option to adjust repayment of student loans—the Income Contingent Repayment Plan ("ICRP").[25] Congress authorized the Secretary of Education to offer alternative repayment plans for student debtors to pursue, one of which is the ICRP.[26] After the ICRP was implemented, Congress amended § 523(a)(8) of the Bankruptcy Code to further restrict the dischargeability of student loan debt.[27] In doing so, however, Congress chose to continue the undue hardship exception to nondischargeability of student loan debt.[28] Based on this legislative history and the policy of giving debtors a "fresh start" by means of the discharge in bankruptcy,[29] the overwhelming consensus of the courts that have faced this issue is that a debtor is *not* precluded from seeking an undue hardship discharge under § 523(a)(8) of the Bankruptcy Code solely because the debtor did not first pursue an administrative option he was eligible for, such as an ICRP.[30] Rather, the courts consider the availability of administrative options to consolidate or obtain alternative repayment plans under the third-prong of the *Brunner* test—whether the debtor has

---

[24] *Id.*
[25] *See Educ. Credit Mgmt. Corp. v. Jesperson*, 571 F.3d 775, 780–81 (8th Cir. 2009).
[26] *See id.*; 20 U.S.C. § 1087a; 20 U.S.C. § 1987e.
[27] *See Jesperson*, 571 F.3d at 787–88 (Bye, J., dissenting in part).
[28] *See id.*; 11 U.S.C. § 523(a)(8).
[29] "The discharge in bankruptcy embodies the policy that relief should be granted to an individual who has ceased to be economically productive by virtue of burdensome debt obligations (the fresh start policy)." Rafael I. Pardo & Michelle R. Lacey, *Undue Hardship in the Bankruptcy Courts: An Empirical Assessment of the Discharge of Educational Debt*, 74 U. Cin. L. Rev. 405, 405 (2005). "The fresh start principle captures the notion that substantive relief should be afforded in the form of forgiveness of existing debt, with relinquishment by the debtor of either existing nonexempt assets or a portion of future income, in order to restore the debtor to economic productivity." *Id.* at 414. "Any exception to discharge, of course, encroaches upon the fresh start principle . . . ." *Id.* at 417–18.
[30] For a compilation of circuit court cases, see *Jesperson*, 571 F.3d at 788.

made good faith efforts to repay his loans.[31]

This reasoning also holds true for the FFELP's administrative discharge for student debtors who are or become permanently and totally disabled.[32] Congress passed the FFELP in 1986, which created the administrative discharge option based on disability.[33] When Congress amended § 523(a)(8) of the Bankruptcy Code in 1998 to further restrict the dischargeability of student loan debt in bankruptcy, Congress left the undue hardship exception in place. This demonstrates the continued viability of undue hardship discharge under § 523(a)(8), even when alternative administrative options may be pursued to potentially discharge student loan debt, such as a disability discharge under the FFELP or an alternative payment plan like the ICRP.

"The policy underlying § 523(a)(8)[] [of the Bankruptcy Code] is dual. It requires accommodating *both* the discharge of debt in furtherance of debtor's 'fresh start' *and* the exception from discharge of student loan debts which may be repaid."[34] Unlike the immediate discharge of student loan debt under § 523(a)(8) of the Bankruptcy Code,

[31] *See, e.g., In re Barrett*, 487 F.3d 353, 364 (6th Cir. 2007) ("Although Barrett's decision to forgo the ICRP is not a per se indication of a lack of good faith, his decision is probative of his intent to repay his loans." (internal quotation marks and citation omitted)); *In re Tirch*, 409 F.3d 677, 682 (6th Cir. 2005) ("While not a *per se* indication of a lack of good faith, Tirch's decision not to take advantage of the ICR is probative of her intent to repay her loans." (citation omitted)); *In re Frushour*, 433 F.3d 393, 402 (4th Cir. 2005) ("The debtor's effort to seek out loan consolidation options that make the debt less onerous is an important component of the good-faith inquiry. Although not always dispositive, it illustrates that the debtor takes her loan obligations seriously, and is doing her utmost to repay them despite her unfortunate circumstances." (citation omitted)). Circuits that use the totality-of-the-circumstances test also consider the decision not to pursue an administrative option as a factor in their analysis. *See Jesperson*, 571 F.3d at 789.
[32] *Cf. In re Cagle*, 462 B.R. 829, 830 (Bankr. D. Kan. 2011) ("The administrative discharge for permanent and total disability under 20 U.S.C. § 1087(a) is not an exclusive remedy subject to the exhaustion doctrine when the Debtor chooses to seek relief under the Bankruptcy Code."); *In re Pitts*, 432 B.R. 866, 869 (Bankr. M.D. Fla. 2010) ("The Court . . . rejects the decision by the bankruptcy court in *Furrow* that requires debtors first to pursue debt forgiveness programs offered by student loan collection agencies before seeking relief under Section 528(a)(8) of the Bankruptcy Code."). *But cf. In re Furrow*, 02-3374, 2005 WL 1397156 (Bankr. W.D. Mo. May 24, 2005) (finding debtor's administrative remedies were not exhausted, and thus the undue hardship claim was not ripe for decision, until the three-year period under her conditional disability discharge granted by the DOE expired).
[33] 20 U.S.C. § 1087(a)(1).
[34] *In re Heckathorn*, 199 B.R. 188, 196 (Bankr. N.D. Okla. 1996), *corrected* (Aug. 16, 1996).

which provides a debtor a fresh start if he proves undue hardship, an administrative discharge for total and permanent disability under the FFELP is only a conditional discharge, meaning a debtor must meet continuing requirements before he is eligible for permanent discharge at the end of a three-year monitoring period.[35] To find that a debtor is *required* to seek an administrative discharge under the FFELP by filing a TPD application with the DOE before being permitted to seek a § 523(a)(8) undue hardship discharge under the Bankruptcy Code runs counter to the legislative histories of the FFELP and § 523(a)(8) of the Bankruptcy Code as well as § 523(a)(8)'s underlying policy of permitting debtors a fresh start.[36]

"A student debtor's . . . entitlement to an administrative discharge does not equate with the debtor's right to receive an educational loan discharge in bankruptcy."[37] Although the DOE offers Dorsey an option to pursue as an alternative to an undue hardship discharge under § 523(a)(8) of the Bankruptcy Code, which other debtors very well may choose to pursue, Dorsey chose first to seek an undue hardship discharge under § 523(a)(8) of the Bankruptcy Code. Just as a debtor need not first pursue an income contingent repayment plan before seeking an undue hardship discharge under § 523(a)(8) of the Bankruptcy Code, neither must a debtor first apply for an administrative discharge pursuant to the FFELP by filing a TPD application with the DOE before doing so.[38]

Rule 16(f) of the Federal Rules of Civil Procedure, which is made applicable in

---

[35] *See In re Pitts*, 432 B.R. 866, 869 (Bankr. M.D. Fla. 2010).

[36] *Heckathorn*, 199 B.R. at 196.

[37] *In re Cagle*, 462 B.R. 829, 831–32 (Bankr. D. Kan. 2011).

[38] *See, e.g., id.*; *In re Waterston*, No. 01-1060, 2002 WL 31856714, at *8 (Bankr. E.D. Pa. Nov. 26, 2002) ("I agree that Debtor's accessing [the Ford Program] would be evidence of his good faith. However, [defendant] cites no authority for the contrary proposition, nor do I find that such an 'exhaustion of administrative remedies' is required under *Brunner*'s good faith prong." (citation omitted)).

10

adversary proceedings by Federal Rules of Bankruptcy Procedure 7016(f), provides in relevant part: "On motion or on its own, the court may issue any just orders . . . if a party or its attorney . . . fails to obey a scheduling or other pre-trial order."[39] Although Section 105(a) of the Bankruptcy Code "authorizes a bankruptcy court to fashion such orders as are necessary to further the substantive provisions of the Bankruptcy Code[,] . . . the powers granted by that statute must be exercised in a manner that is consistent with the Bankruptcy Code."[40] The Court finds that ordering Dorsey to pursue an administrative disability discharge pursuant to the FFELP did not further the substantive provisions of the Bankruptcy Code, and thus the Bankruptcy Court erred by requiring Dorsey to complete a TPD application and submit it to the DOE before he could move forward with his adversary proceeding.

Although it was improper to order Dorsey to seek an administrative discharge at this stage of the proceedings, his "disability and his attempt (or lack thereof) to obtain an administrative discharge may be considered in an undue hardship analysis under § 523(a)(8)."[41] In examining whether the debtor made a good faith effort to repay his loans under the third-prong of the *Brunner* test, the court must "look[] to the debtor's 'efforts to obtain employment, maximize income, and minimize expenses.' Further, the debtor's hardship must be a result of factors over which [he] had no control."[42] "The good faith requirement is sufficiently malleable to cover a wide array of conditions. For example, the bankruptcy court may determine the debtor lacks a good faith attempt to repay the loan when administrative remedies are available to him but are not

---

[39] Fed. R. Civ. P. 16(f).
[40] *Matter of Oxford Mgmt., Inc.*, 4 F.3d 1329, 1334 (5th Cir. 1993).
[41] *Cagle*, 462 B.R. at 832. *See also In re Brosnan*, 323 B.R. 533, 538–39 (Bankr. M.D. Fla. 2005).
[42] *In re Frushour*, 433 F.3d 393, 402 (4th Cir. 2005) (quoting *In re O'Hearn*, 339 F.3d 559, 564 (7th Cir. 2003) (internal quotation marks omitted)).

pursued."[43] "The debtor's effort to seek out loan consolidation options that make the debt less onerous is an important component of the good-faith inquiry" because, "[a]lthough not always dispositive, it illustrates that the debtor takes [his] loan obligations seriously, and is doing [his] utmost to repay them despite [his] unfortunate circumstances."[44] Payment history also is an important, but not dispositive, factor.[45] However, the Court emphasizes that Dorsey's failing to pursue an administrative discharge by filing a TPD application with the DOE is merely one factor for the Bankruptcy Court to consider when analyzing Dorsey's good faith efforts to repay his loans under the third-prong of the *Brunner* test.[46] Dorsey's choosing to seek an undue hardship discharge instead of applying for a TPD discharge is *not* dispositive of his making a good faith effort to repay his loans.[47]

 *(2) The Bankruptcy Court's Order dismissing Dorsey's adversary proceeding for failure to prosecute and failure to comply with its order*

A district court may dismiss an action *sua sponte* for failure to prosecute or to comply with its orders.[48] Such a dismissal is a discretionary ruling and reviewed for abuse of discretion.[49] However, "[a] dismissal with prejudice is an extreme sanction that deprives the litigant of the opportunity to pursue his claim."[50] Consequently, the Fifth

---

[43] *Cagle*, 462 B.R. at 832.

[44] *Frushour*, 433 F.3d at 402.

[45] However, "[a] lack of payment does not by itself preclude a good faith finding." *In re Nary*, 253 B.R. 752, 768 (N.D. Tex. 2000) (internal quotation marks and citation omitted).

[46] *Cf. Frushour*, 433 F.3d at 402 ("Frushour has not shown the requisite effort to repay her loans. To be sure, she should be commended for making several payments in the past. But she did not seriously consider the income contingent plan under the William D. Ford Direct Loan Program."); *In re Tirch*, 409 F.3d 677, 682 (6th Cir. 2005) ("While not a per se indication of a lack of good faith, Tirch's decision not to take advantage of the ICR is probative of her intent to repay her loans.").

[47] The decision to discharge a debtor's "debts represents a conclusion regarding the legal effect of the bankruptcy court's factual findings as to [the debtor's] circumstances" and is reviewed de novo. *In re Gerhardt*, 348 F.3d 89, 91 (5th Cir. 2003).

[48] Fed. R. Civ. P. 41(b); *Rogers v. Kroger Co.*, 669 F.2d 317, 319–20 (5th Cir. 1982).

[49] *Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188, 1191 (5th Cir. 1992). *See also Raborn v. Inpatient Mgmt. Partners, Inc.*, 278 F. App'x 402, 404 (5th Cir. 2008) (unpublished).

[50] *Berry*, 975 F.2d at 1191 (internal quotation marks and citation omitted).

Circuit has limited the lower court's discretion in dismissing cases with prejudice.[51] Dismissals with prejudice for failure to prosecute or for failure to comply with a court order may be affirmed "only when (1) there is a clear record of delay or contumacious conduct by the plaintiff, and (2) the [lower] court has expressly determined that lesser sanctions would not prompt diligent prosecution, or the record shows that the [lower] court employed lesser sanctions that proved to be futile."[52] Usually when such dismissals are affirmed, at least one of the following aggravating factors is also present: "(1) delay caused by [the] plaintiff himself and not his attorney; (2) actual prejudice to the defendant; or (3) delay caused by intentional conduct."[53]

"A clear record of delay is found where there have been significant periods of total inactivity."[54] The record in this case does not reflect any significant periods of inactivity or delay caused by Dorsey. To the contrary, during the eight months this adversary proceeding was pending, Dorsey actively participated in the proceedings. The only periods of delay in the adversary proceeding were caused by continuances of the pre-trial conference, both by the Bankruptcy Court and by Dorsey, and the stay imposed due to the Government funding lapse, which was requested by all parties. Immediately after the stay was lifted, Dorsey began pursuing a hardship discharge by filing his motion for summary judgment. Additionally, both he and his attorney attended conferences and hearings before the court.[55] Dorsey actually even attempted to comply with the court's

---

[51] *Id.*

[52] *Id. See also In re Young*, 416 F. App'x 392, 398–99 (5th Cir. 2011) (unpublished).

[53] *Berry*, 975 F.2d at 1191 (alteration in original) (internal quotation marks and citation omitted).

[54] *Id.* (internal quotation marks omitted) (citing *Morris v. Ocean Sys., Inc.*, 730 F.2d 248, 252 (5th Cir. 1984)).

[55] *See Morris*, 730 F.2d at 252 ("The facts before us simply do not exhibit a clear record of either delay or contumacious conduct. Only eight months elapsed from the date of the first status conference on Morris's suit to the date of its dismissal. Within that period, counsel for the plaintiff attended both status conferences, filed a motion to defer ruling on the defendant's motion to dismiss, and served notice of his intent to proceed with depositions. This conduct does not present the significant periods of total inactivity

order by filing a TPD application, albeit incomplete, into the record on March 7, 2014. The Bankruptcy Court dismissed his adversary proceeding four days later on March 11, 2014. At no point in this case were there significant periods of total inactivity justifying a FRCP 41(b) dismissal.[56]

Nor does the record in this case reflect a pattern of contumacious conduct by Dorsey or his attorney to justify the extraordinary remedy of dismissal with prejudice.[57] "Contumacious conduct is that which goes beyond mere negligence and evinces 'stubborn resistance to authority.'"[58] Usually, "bad faith" or "persistent disobedience to court orders" is required to justify such dismissal.[59] The only conduct that the Bankruptcy Court appears to have objected to was Dorsey's failure to follow the court's order to file a TPD application with the DOE. "Generally, where a plaintiff has failed only to comply with a few court orders or rules, [the Fifth Circuit has] held that the district court abused its discretion in dismissing the suit with prejudice."[60] Indeed, Dorsey failed to follow court orders, but he in good faith sought to have the opportunity to explain his reasons for refusing to fill out the application, and he actually attempted to follow the court's order by completing the TPD application, at least to some extent,

---

that have been held to constitute a clear record of delay." (internal quotation marks and citation omitted)).

[56] *See In re Wood*, 199 F. App'x 328, 333 (5th Cir. 2006) (unpublished) ("Twenty-six days does not constitute a significant period of time under our precedent. Our cases recognize that delay which warrants dismissal with prejudice must be longer than just a few months." (internal quotation marks and citation omitted)).

[57] Dorsey filed this appeal *pro se*. The Court cautions Dorsey that personal attacks and intemperate comments about a judge of this court are impermissible, and any further briefing before this Court or the Bankruptcy Court must convey the appropriate level of respect for all officers of the court.

[58] *Webb v. Morella*, 457 F. App'x 448, 453 (5th Cir. 2012) (unpublished) (quoting *Millan v. USAA Gen. Indem. Co.*, 546 F.3d 321, 327 (5th Cir. 2008) (internal quotation marks and citation omitted)).

[59] *John v. State of La.*, 828 F.2d 1129, 1132 (5th Cir. 1987). *See also Jackson v. Baden*, 95 F.3d 54 (5th Cir. 1996).

[60] *Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188, 1191 n.6 (5th Cir. 1992) (discussing cases with no clear record of delay or contumacious conduct for failure to comply with a few court orders or rules and cases with a clear record of delay or contumacious conduct for failure to comply with several court orders or rules).

four days prior to dismissal. "[T]his case does not present the sort of egregious conduct for which a dismissal with prejudice should be reserved."[61] Additionally, it would be incongruous for this Court to determine the Bankruptcy Court did not have authority to order Dorsey to first apply for an administrative disability discharge before proceeding with his adversary proceeding under § 523(a)(8) of the Bankruptcy Code but then to find it was proper for the Bankruptcy Court to dismiss his case with prejudice because he failed to follow the court's order to do so.

Although the Bankruptcy Court warned Dorsey that failure to comply with its order to file a TPD application with the DOE may result in dismissal of his adversary proceeding, the record reveals no evidence of delay or contumacious conduct on Dorsey's part in pursuing the adversary proceeding that is deserving of the ultimate sanction—dismissal with prejudice and losing his day in court. The Fifth Circuit has "emphasiz[ed] the importance, except in the most flagrant circumstances, of resorting to sanctions that do not deprive a litigant of his day in court."[62] Because a dismissal with prejudice for failure to prosecute is such an extreme sanction and Dorsey's actions do not amount to a clear record of delay or contumacious conduct, the Court finds the Bankruptcy Court abused its discretion by dismissing Dorsey's case for failure to prosecute and for failure file a TPD application per the court's order.

*(3) Dorsey's motion for summary judgment*

Dorsey also argues on appeal that the Bankruptcy Court erred "by not allowing the Plaintiff's Attorney to schedule a hearing on [Plaintiff's Motion for Summary Judgment filed on November 25, 2013], but instead, redirect[ing] the Plaintiff's efforts

---

[61] *Morris v. Ocean Sys., Inc.*, 730 F.2d 248, 252 (5th Cir. 1984).
[62] *Flaksa v. Little River Marine Const. Co.*, 389 F.2d 885, 888 (5th Cir. 1968). *See also Connolly v. Papachristid Shipping Ltd.*, 504 F.2d 917, 920 (5th Cir. 1974).

towards filling out a . . . [TPD] application irrespective of its inapplicability to the Plaintiff."[63] Dorsey filed a motion for summary judgment and accompanying affidavit of uncontested facts on November 25, 2013; however, a notice of deficiency was entered into the record on November 26, 2013 indicating the motion was deficient because it failed to include a notice of hearing and proper certificate of service.

The appropriateness of directing Dorsey to seek a disability discharge under the FFELP is addressed above. With respect to scheduling a hearing on a motion for summary judgment, Rule 56(b) of the Federal Rules of Civil Procedure states that, "[u]nless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery."[64] However, section (d) states: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."[65]

The record in this case indicates no action was taken with respect to Dorsey's motion for summary judgment after it was marked as deficient. Because the Bankruptcy Court did not rule on Dorsey's motion and since the Court finds remand is appropriate in this case, Dorsey may refile his motion for summary judgment once the case is remanded, provided he cures the deficiencies mentioned above. However, any Defendant may still take the action available under Rule 56(d), if appropriate.

---

[63] R. Doc. 1-3 at p. 3.
[64] Fed. R. Civ. P. 56(b).
[65] Fed. R. Civ. P. 56(d).

16

## CONCLUSION

Accordingly, **IT IS ORDERED** that the order of the U.S. Bankruptcy Court of the Eastern District of Louisiana dismissing Dorsey's case for failure to prosecute and for failure to comply with the court's order is **REVERSED.** This matter is **REMANDED** to the U.S. Bankruptcy Court for the Eastern District of Louisiana for further proceedings consistent with this order.


New Orleans, Louisiana, this 26th day of February, 2015.


SUSIE MORGAN
UNITED STATES DISTRICT JUDGE